IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

MULE-HIDE PRODUCTS CO., INC.,

Plaintiff,

v.                                                                              OPINION and ORDER

MOD PANEL MANUFACTURING, LTD.                                                   18-cv-659-jdp
and PETER KISS,

Defendant.
_____

This case arises out of a contract between plaintiff Mule-Hide Products Co., Inc. and Mod Panel Manufacturing, Ltd. Mule-Hide contends that Mod Panel breached its agreement to buy raw materials from Mule-Hide and pay Mule-Hide a commission for sales it made. Mule-Hide is also suing defendant Peter Kiss (Mod Panel's CEO) for fraud.

Defendants have moved to dismiss both of Mule-Hide's claims. Dkt. 10. As for the breach of contract claim, defendants say that the case must be litigated in Canada under a forum-selection clause and the doctrine of *forum non conveniens*. As for the fraud claim, defendants say that it is barred by the economic loss doctrine. For the reasons explained below, the court concludes that the case was properly filed in this district, but that Mule-Hide's fraud claim must be dismissed.

ALLEGATIONS OF FACT

The court draws the basic facts from Mule-Hide's complaint, Dkt. 1-1, and it will accept them as true for the purpose of deciding the parts of defendants' motion brought under Rule 12(b)(6). *Parungao v. Comm. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). In the analysis

section, the court can, and will, consider some additional facts and evidence pertaining to whether this case is in the proper forum.

Plaintiff Mule-Hide Products Co., Inc., is a Texas corporation that maintains its principal place of business in Beloit, Wisconsin. Mod Panel Manufacturing, Ltd., is a Canadian corporation headquartered in Alberta that makes roofing panels. Peter Kiss is a citizen and resident of Canada.

On at least 19 occasions between January 2016 and February 2017, Mod Panel ordered raw materials from Mule-Hide. Mule-Hide fulfilled all of these orders by supplying the requested materials. At some point, Mod Panel stopped paying Mule-Hide. Mod Panel also failed to pay Mule-Hide the commissions it was obligated to pay on sales that Mod Panel made to a third-party company in Canada. Mule-Hide alleges that Mod Panel owes hundreds of thousands of dollars for raw materials and commissions.

Mule-Hide began seeking payment for its overdue invoices in October 2016. In response to Mule-Hide's efforts, Mod Panel CEO Peter Kiss made "multiple false representations that payment would be made in the near future" by letter and text message. Dkt. 1-1, ¶ 15. In October 2017, Kiss apologized for the delay and reassured Mule-Hide that he had found a financial partner. He promised that, as soon as the relevant papers were signed between him and the partner, Mule-Hide would be paid. He continued making such promises into January 2018, but Mod Panel never paid up. As a result of Kiss's promises, Mule-Hide delayed its collection efforts longer than it otherwise would have.

In May 2018, Mule-Hide filed suit in Rock County Circuit Court. Defendants removed the case to this court under 28 U.S.C. § 1441(b). Because there is diversity of citizenship

2

between Mule-Hide and defendants and the amount in controversy is more than $75,000, the

court may exercise jurisdiction under 28 U.S.C. § 1332.

ANALYSIS

## A. Forum selection clause

Defendants contend that Mule-Hide's breach of contract claims must be dismissed

under a forum-selection clause in the parties' purchasing agreement. *See* Dkt. 12-1. A valid

forum-selection clause would generally warrant transfer under 28 U.S.C. § 1404 or the doctrine

of *forum non conveniens*. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S.

49, 62 (2013). But in considering the appropriate forum, the court must consider a range of

factors, and thus it is not limited to the facts alleged in the complaint. *Id*.

Mule-Hide did not attach the purchasing agreement to its complaint, but defendants

have provided it. The forum-selection clause provides, in relevant part:

> With respect to Raw Materials sourced in Canada, the parties
> hereby irrevocably consent and submit to the jurisdiction of the
> courts of the Province of Alberta; agree that the sole and exclusive
> venue for any cause of action (in law or equity) based on this
> Agreement . . . will lie in the courts of Alberta and waive all
> objections to venue and *forum non conveniens*.
>
> With respect to Raw Materials sourced in the United States,
> consent [*sic*] irrevocably consent and submit to the jurisdiction of
> the courts of the State of Wisconsin; agree that the sole and
> exclusive venue for any cause of action (in law or equity) based
> on this agreement . . . will lie in the courts of the State of
> Wisconsin and waive all objections to venue and *forum non
> conveniens*.

Dkt. 12-1, at § 12.10. According to defendants, 96 percent of the contract damages underlying

the raw materials claim concern raw materials sourced in Canada, making the suit almost

entirely subject to the forum-selection clause. (As discussed in the next section, defendants ask

3

that the claim for the other 4 percent of the raw-materials damages be dismissed on *forum non conveniens* grounds to avoid duplicative litigation.)

A threshold problem with defendants' argument is that defendants have not cited evidence that Mule-Hide agreed to the forum-selection clause. Although the signature page of the agreement at issue contains a signature from Mod Panel's representative, Peter Kiss, the signature line for Mule-Hide's representative is blank. *See id.* at 11. In its opposition to defendants' motion to dismiss, Mule-Hide contends that the unexecuted document was merely a draft circulated to the parties after Kiss took over Mod Panel from a prior CEO, and that there was never an agreement on its terms.

Mule-Hide submits a second agreement, which it says governed the relationship between Mule-Hide and Mod Panel's predecessor entity, Mod Panel, Inc. *See* Dkt. 16-1. This agreement *was* executed—by Jonathan Shepard, president of Mule-Hide, and David Kennedy, the president of Mod Panel's predecessor entity. Although the executed agreement also contains a forum-selection clause, neither side explains how the forum-selection clause in that agreement would require dismissal or transfer of this case.

As the party seeking to enforce the forum-selection clause, defendants bear the burden of "establishing that a binding agreement was made." *Dr. Robert L. Meinders DC Ltd. v. UnitedHealthcare*, 800 F.3d 853, 857 (7th Cir. 2016). Defendants do not explain why the court should enforce the unexecuted forum-selection clause despite the absence of any signature from Mule-Hide.

In their reply brief, defendants ask the court to "stay its ruling on the Raw Materials claim pending additional limited discovery" into "the parties' contractual relationship, including whether either of the contracts before the Court binds Mod Panel and Mule-Hide,

and if so, whether the forum-selection clauses in those contracts require dismissal of all or parts of the Raw Materials Claim in favor of Alberta." Dkt. 20, at 10. But defendants haven't identified the discovery they want or explained how that discovery could be helpful. Under these circumstances, the court will deny their request. *Cf. GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1026 (7th Cir. 2009) (party not entitled to jurisdictional discovery unless it makes a prima facie showing that discovery would support its position).

Because defendants have not demonstrated that the forum-selection clause is enforceable, the court will deny their motion to dismiss on this ground.

## B. Forum non conveniens

Defendants contend that the contract claims based on (1) the commissions allegedly owed to Mule-Hide by Mod Panel and (2) the four percent of the damages based on sale of raw materials sourced in the United States should be dismissed on *forum non conveniens* grounds. In the absence of a valid forum-selection clause, federal courts can still dismiss a suit over which it would normally have jurisdiction when it would best serve the convenience of the parties and the ends of justice. *Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009). When there is a more appropriate federal forum for the case within the United States, a court will transfer it under 28 U.S.C. § 1404(a), which codifies the doctrine of *forum non conveniens* in domestic cases and replaces the traditional remedy of outright dismissal. But when, as here, a party argues that a foreign jurisdiction is the most appropriate forum, the doctrine of *forum non conveniens* continues to apply, and dismissal in favor of the foreign forum is appropriate. *Atl. Marine Const. Co.*, 571 U.S. at 60.

*Forum non conveniens* is "a drastic exercise of the court's inherent power" that should "be employed sparingly." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805–06 (7th Cir. 2016) (quoting

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011)). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 504 (1947)). In evaluating whether to dismiss a case on *forum non conveniens* grounds, courts analyze: (1) the availability of an adequate alternative forum; (2) the appropriate level of deference to the plaintiff's choice of forum; (3) relevant private interest factors; and (4) relevant public interest factors. *Macedo v. Boeing Co.*, 693 F.2d 683, 686–90 (7th Cir. 1982).

The court will assume, as defendants contend, that Alberta, Canada is an adequate and available alternative forum.[1] But that isn't enough by itself to require dismissal. *See SIRVA*, 832 F.3d at 807. Because none the other factors provide strong support for trying the case in Canada, the court will not dismiss the case under the doctrine of *forum non conveniens*.

### 1. Plaintiff's choice of forum

Mule-Hide's choice of a Wisconsin forum is entitled to substantial deference. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) ("[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and

---

[1] Mule-Hide contends that the defendants cannot demonstrate that Albert is "available" for the purposes of the *forum non conveniens* analysis. An alternative forum is available "if all parties are amenable to process and are within the forum's jurisdiction." *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997). Mule-Hide argues that "all parties" includes Mule-Hide, and that defendants can't demonstrate that Mule-Hide is within the jurisdiction of or amenable to process in Alberta. But the reference to "all parties" in the *Kamel* case referred to all *defendants* in multi-defendant suits. *See, e.g., Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 867 (7th Cir. 2015) (in upholding dismissal of case brought by Holocaust survivors and their heirs on *forum non conveniens* grounds, court observed that all of the parties that plaintiff sought to hold jointly and severally liable were located in Hungary or had consented to the jurisdiction of the Hungarian courts; there was no analysis of *plaintiffs*' amenability to process in Hungary). Defendants are within the jurisdiction of and amenable to service in Alberta, which is all that matters for the purposes of the availability analysis.

public interest factors clearly point towards trial in the alternative forum."). This is particularly true in this case because Mule-Hide is suing in its home forum. *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 524 (7th Cir. 2001).

Defendants contend that the presumption is weaker in this case because many of the relevant events occurred in Canada, not Wisconsin, such as the sales Mod Panel made to the third-party company in Canada, which underlies Mule-Hide's commissions claim. But other events at issue in the suit did occur in Wisconsin: Mod Panel directed communications, purchase orders, and payments to Mule-Hide in Wisconsin, and Mule-Hide shipped raw materials to Canada from Wisconsin. Dkt. 15, at 3.

Defendants cite two cases to support their argument on this issue, but both are readily distinguishable. *Adler v. Avis Rent A Car Sys., Inc.*, 391 F. Supp. 466, 469 (E.D. Wis. 1975) (declining to apply deference to out-of-state plaintiff suing an out-of-state defendant over events that occurred in Venezuela); *Williams v. Humphrey*, No. 09-cv-202-bbc, 2009 WL 2424329 (W.D. Wis. Aug. 5, 2009) (transferring case to a different Wisconsin district under 28 U.S.C. § 1404(a)). Neither case suggests that the forum choice of a Wisconsin-based plaintiff is entitled to only minimal deference in a *forum non conveniens* analysis.

### 2. Private interest factors

The court must also balance several factors related to the private interests of the litigants, including: "(1) relative ease of access to sources of proof; (2) availability of compulsory process and costs for attendance of witnesses; (3) possibility of view of premises, if appropriate; and (4) other practical issues, including ease of enforcement of any ultimate judgment." *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 866 (7th Cir. 2015).

None of these factors strongly favor either side. There are records and witnesses in both forums. Neither side contends that viewing any premises will be necessary, and defendants do not contend that there would be any issue regarding the enforceability of a judgment if the case proceeds here.

Defendants say that only a Canadian court could compel documents and testimony from the nonparty Canadian company that Mod Panel did business with, which furnishes the basis of Mule-Hide's commissions claim. But defendants do not identify any relevant information that would be in the sole custody of that company. In the absence of an explanation why third-party discovery is important in this case, it is not a persuasive reason to dismiss the case.

### 3. Public interest factors

The final part of the *forum non conveniens* analysis requires consideration of public interest factors, which include: (1) the administrative difficulties stemming from court congestion; (2) the local interest in having localized disputes decided at home; (3) the interest in having a case heard in a venue familiar with the controlling law; (4) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 868 (quoting *Stroitelstvo*, 589 F.3d at 425).

Defendants do not argue that the courts of Alberta are less congested than this court or that Alberta has a greater interest in the dispute than Wisconsin. But defendants say that Canadian law should apply to Mule-Hide's commission claim.

The parties agree that the court should apply Wisconsin law to determine the substantive law that governs the parties' dispute. Under Wisconsin's "grouping of contacts"

8

rule, contract rights are "determined by the law of the jurisdiction with which the contract has its most significant relationship." *Kender v. Auto-Owners-Ins. Co.*, 2010 WI App 121, ¶ 21, 329 Wis. 2d 378, 793 N.W.2d 88 (citation and internal alteration omitted). That determination is guided by yet another set of factors: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* (quoting *Utica Mut. Ins. Co. v. Klein & Sons, Inc.*, 157 Wis. 2d 552, 557, 640 N.W.2d 763 (Ct. App. 1990)).

Defendants contend that the third and fourth factors support applying Canadian law to the commissions claim because that claim arises out of sales that occurred in Canada, between two Canadian companies, that involved Canadian dollars. But it is by no means clear which direction the remaining factors cut. And even assuming that Canadian law applies to the commissions claim, there is still the matter of the raw materials claims, which comprises the greater part of the damages at issue. Regardless, this court is capable of applying both Wisconsin and Canadian contract law as appropriate. That one of the claims at issue might require application of Canadian law is not sufficient to override Mule-Hide's forum choice.

So, like the private interest factors, the public interest factors do not favor either party. The bottom line is that most of the factors related to the *forum non conveniens* doctrine do not strongly favor either a Wisconsin or Alberta forum. In that circumstance, the plaintiff's choice of forum is controlling. *Piper Aircraft*, 454 U.S. at 255. The court will deny defendants' motion to dismiss Mule-Hide's breach-of-contract claims on *forum non conveniens* grounds.

## C. Economic loss doctrine

Defendants contend that Mule-Hide's fraud claim against defendant Kiss is barred by Wisconsin's economic loss doctrine, which prevents a plaintiff from claiming tort damages for purely economic losses when the underlying wrongful conduct is a breach of a contract between the parties. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 24, 270 Wis. 2d 146, 677 N.W.2d 233. The purpose of the doctrine is to "preserve the distinction between tort and contract law" so that parties have "freedom to allocate any incidental risks" as they see fit. *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶ 34, 262 Wis. 2d 32, 662 N.W.2d 652.

Mule-Hide's fraud claim appears to be a prototypical example of the type of claim barred by the doctrine: the fraud claim is based on Kiss's false representations that Mule-Hide would honor the contract—a representation already inherent in the contract itself. Mule-Hide's damages arise out of Mod Panel's alleged failure to keep their promises, which makes it a straightforward breach of contract claim. Because the underlying wrong is the breach of contract, the doctrine applies. *See, e.g., Schreiber Foods, Inc. v. Lei Wang*, 651 F.3d 678, 680–81 (7th Cir. 2011) (claim of fraudulent misrepresentation against individual defendant, which was based on the defendant's representations that a non-defendant company that plaintiff had contracted with would buy a particular batch of the plaintiff company's product, was barred by Wisconsin's economic loss doctrine).

The economic loss doctrine does have exceptions. *See Martin v. LG Elecs. USA, Inc.*, No. 14-cv-83-JDP, 2015 WL 1486517, at *5–8 (summarizing the three principle exceptions, which apply to services contracts, noneconomic losses, and claims based on fraudulent inducement). Only one of them is arguably relevant here: the exception for "fraudulent inducement" when a party suffers loss "extraneous" to the contract. *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI

111, ¶ 42, 283 Wis. 2d 555, 699 N.W.2d 205. The fraudulent inducement exception applies in situations where parties to a contract appear to negotiate freely, but one party's fraudulent behavior results in the other party's inability to negotiate fair terms and make an informed decision. The alleged fraud must be extraneous to the agreement, meaning that it cannot be interwoven with the terms of the contract itself. *Digicorp*, 2003 WI 54, ¶ 3. Mule-Hide contends that "the fraud allegations against Kiss are extraneous to the invoices between Mule-Hide and Mod Panel" because the misrepresentations in question were "unrelated to the quality or characteristics of the specific goods listed on its invoices to Mod Panel." Dkt. 15, at 25–26. But Kiss's misrepresentations went to the core premise of the contract: that Mod Panel would pay for the goods it purchased. Mule-Hide cites no authority that supports its position that promises to honor a contract are extraneous to the contract.

Mule-Hide also contends that its fraud claim is based on Kiss's personal tortious conduct, separate and apart from the breach of contract claims by Mod-Panel. It is true that corporate officers or agents generally may not shield themselves from liability for torts they personally commit by hiding behind a corporate entity, even if they were acting on behalf of the corporation at the time of the tort. *See Oxmans' Erwin Meat Co. v. Blacketer*, 85 Wis. 2d 683, 292–93, 273 N.W.2d 285 (1979). But this general principle gives way to the economic loss doctrine when, as here, the tortious conduct in question is interwoven with subject matter of the breached contract. *See, e.g.*, *Grice Eng'g, Inc. v. JG Innovations, Inc.*, No. 09-cv-632-WMC, 2011 WL 13244787, at *6 (W.D. Wis. Mar. 23, 2011) (fraudulent inducement claims against buyer's agents based on their allegedly false statements regarding buyer's ability to purchase assets were barred by economic loss doctrine; the proper remedy was a contract action for buyer's breach of the promissory note). This is so even though Kiss himself was not a party to

11

the contract between Mule-Hide and Mod-Panel. *See Schreiber Foods, Inc. v. Lei Wang*, No. 08-C-962, 2010 WL 4683726, at *6 (E.D. Wis. Nov. 10, 2010) ("If the economic loss doctrine did not bar tort claims against a company's employees and agents acting within the scope of their employment, as well as the company itself, the other party to a transaction could avoid its effects simply by recasting its misrepresentation claim against the employee or agent with whom it actually dealt. . . . This would frustrate the purposes underlying the economic loss doctrine.").

Mule-Hide cites two cases that it says support the opposite result, but neither is persuasive. *First National Bank in Oshkosh v. Scieszinski*, 25 Wis. 2d 569, 131 N.W.2d 308 (1964) predates Wisconsin's adoption of the economic loss doctrine in 1989. And *Advantage Leasing Corp. v. NovaTech Sols., Inc.*, 2005 WI App 88, 281 Wis. 2d 270, 695 N.W.2d 903, is an unpublished disposition issued prior to 2009, meaning that it could not be cited even for its persuasive value in Wisconsin courts. *See* Wis. Stat. § 809.23(3)(b). In any case, *Advantage Leasing* is not squarely on point, and contains only a brief comment about the economic loss doctrine.

Because Mule-Hide's fraud claim against Kiss falls squarely within the economic loss doctrine, the court will dismiss the case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

ORDER

IT IS ORDERED that:

1.  Defendants' motion to dismiss, Dkt. 10, is GRANTED as to the fraud claim against Peter Kiss and DENIED as to the breach-of-contract claim against Mule-Hide.

2.  Defendant Peter Kiss is DISMISSED from the case.

Entered April 26, 2019.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge